## Junction Mining Company v. John Ench.

1. ORDINARY CARE—*when essential to prove exercise of, in an action by a servant against his master to recover for personal injuries sustained by him while working in a mine.* It is essential that the plaintiff under a count charging common law negligence, should allege and prove exercise of ordinary care; where, however, the count is based upon allegations of statutory negligence, averment and proof of the exercise of ordinary care is not essential.·

2. ORDINARY CARE—*exercise of, when a question of fact.* Where the evidence is conflicting, the jury are the judges of the credibility of the witnesses and as to whether ordinary care has been exercised.

3. RULE—*when a, governing the movements of miners employed in a mine is unreasonable.* Such a rule is unreasonable where it forbids the miners from leaving a particular portion of the mine at a particular hour for any reason whatever.

4. RULE—*when a, is in contravention of statute.* A rule promulgated by a mining company, forbidding miners from leaving a particular portion of the mine at a particular hour, is contrary to the statute, in so far as it may forbid a miner from leaving the mine when he has been prevented from doing further work.

5. RULE—*when disobedience of a rule is not wilful.* Wilful disobedience of a rule forbidding miners employed in a mine from leaving a particular portion thereof at a particular time, is not established where a miner left contrary to such rule because of his sickness.

6. CONTRIBUTORY NEGLIGENCE—*when a person placing himself in danger is not guilty of.* Where one, without his own fault, is, through the negligence of another, put in such apparent danger as to cause him terror, loss of self-possession and bewilderment, and, as a natural consequence thereof, he, in attempting to escape, puts himself in a more dangerous position, he is not, as a matter of law, chargeable with contributory negligence.

7. MINING COMPANIES—*obligations of, to protect employees.* Mining companies are obligated to observe not only the duties imposed by statute but those which exist by virtue of the common law.

8. PROXIMATE CAUSE—*by whom to be determined.* The question as to what is the proximate cause of the injury is, ordinarily, a question of fact to be determined by the jury.

9. MINE ENTRY—*when, is not shown to be in " safe" condition.* Evidence to the effect that a mine entry was in "fair" condition, does not establish that its condition was "safe."

10. SPECIAL FINDINGS—*power of court to instruct as to.* There is no rule of law and no practice which requires the court to instruct the jury to specify in their general verdict under what count or counts of the declaration the same is returned. This information can only be ob-

tained by resort to the statute authorizing the submission of special findings or interrogatories.

11. INSTRUCTIONS—*when failure of plaintiff's, to refer to particular counts in the declaration is not misleading.* The failure of the plaintiff's instructions to refer specifically to each count of the declaration, is not misleading, where the defendant's given instructions refer in detail to the elements essential to be proved to sustain each of the different counts of the declaration.

Action on the case for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1903. Affirmed. Opinion filed November 17, 1903.

BROWN, WHEELER, BROWN & HAY, for appellant.

WILLIAM L. PATTON and H. S. MILLER, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by John Ench against the Junction Mining Company, to recover damages resulting from personal injuries received by him through ·the alleged negligence of said corporation, while he was in its employ as a miner. The plaintiff recovered judgment for $2,500, from which the defendant appeals.

The declaration consists of three counts: The first count alleges that defendant was engaged in mining coal; that it was its duty to keep and maintain a certain passageway, used for hauling coal by draft animals, in a reasonably safe condition for its employees to use in going or coming to work; that said defendant carelessly and negligently permitted said passageway to be obstructed by large quantities of materials; that plaintiff while in the exercise of ordinary care, in endeavoring to avoid an approaching car and in stepping to one side, was impeded by said obstructions, caught by said car and thereby suffered damage. The second count alleges carelessness and negligence of defendant in not providing places of refuge, or rooms cut at regular twenty-yard intervals, or clear spaces of two and one-half feet from car to rib, all as provided by statute; and while plaintiff was exercising due care and endeavoring to

get away from a car he was struck and injured by said car
in consequence of the careless and negligent failure of the
defendant company to maintain places of refuge, or cut-
rooms, or clear spaces of two and one-half feet from car to rib-
The third count avers that the defendant did not main.
tain the things mentioned in the second count and provided
by statute, but therein knowingly and wilfully made de-
fault, and plaintiff, in endeavoring to get out of the way of
a car, was caught and injured.

The evidence tends to show the following facts : From
the bottom of the shaft of the mine where appellee was in-
jured, entries ran out in all directions to rooms where miners
were engaged in digging and blasting coal. One of these
entries ran in a southerly direction and was called "The
Main South Entry." Through it, all the coal brought
from the south side of the mine was carried, and, through
it, all the men employed on that side had to come and
go twice a day. The entry was several hundred feet long
and over six feet high; it had two sides of solid coal, a
roof of slate and a floor of fire clay. Starting from the bot-
tom of the hoisting shaft, this entry for about 100 feet was
very wide and had a double track made of iron rails laid
down on wooden ties sunk in the floor. Where the tracks
came together, at what is called the first "latches" or
switch, the entry narrowed and ran for about 300 feet to
another parting called the second "latches," and there it
became a double track again. The accident occurred at
some place on the single track. Some two or three years
before the time of the accident the single track was lowered
from one to two feet in depth, and from four to six feet in
width, by digging out the fire clay through a portion of its
length, in order to make a level grade. This left an em-
bankment of from one to two feet of the original floor of
fire clay on each side of the track, from eighteen inches to
two and one-half feet high, which became, as the water
dried out of it, soft and crumbly. Upon this embankment,
from time to time, debris fell from the sides and roof of
the gangway, or was thrown up from the trench, until all

along the gangway a sloping pile of various materials from one to four feet high had accumulated, until between the edge of the embankment and the foot of this pile there remained a level space of from a foot to eighteen inches in width.

The plaintiff left his room at about 3:30 P. M. on the day of the accident, and walked through the main south entry, going north toward the bottom of the shaft. He had passed the second or south "latches" and had proceeded along the single track from fifty to eighty feet, when he heard the rattling of a car some thirty or forty feet away; he went a couple of steps ahead and ran to the closest place on the embankment, and climbed thereon. He stood there a moment, when the embankment crumbled and he fell in front of the horse, which ran away, and he was dragged along by the cars for some distance and badly injured.

There is evidence tending to prove that at about twenty feet south from the place of the accident and on the side where appellee was injured, there was a wide place where the embankment had been leveled to the track, and about twenty-five feet south another wide place formerly used as a "sump" to catch surface water, but which at the time was filled up to the level of the track.

To recover under the first count of the declaration, which is properly designated as a common law count, in contradistinction to the second and third counts, it was necessary for appellee to aver and prove that at the time of the injury he was in the exercise of due care. Appellant contends that appellee cannot recover under said count, for the reason that he was walking in a place where he had no right to be at the time, in wilful violation of Sections 31 and 32 of Chapter 93 of the Statute, entitled "Mines and Miners," (R. S. 1901, 1219), which, so far as applicable to said contention, are as follows:

"Section 31.—It shall be unlawful for any miner  *  *  to enter any part of the mine against caution  *  *  *  or to disobey any order given in pursuance of this act," etc.

" Section 32.—It shall be the duty of every operator to post, on the engine house and at the pit top of his mine, in such manner that the employees of the mine can read them, rules not inconsistent with the act, plainly printed in the English language, which shall govern all persons working in the mine, and the posting of such notices as provided, shall charge all employees of such mine with legal notice of the contents thereof."

The rules of the appellant provided that drivers should have the right of way on the hauling roads until 4:10 o'clock P. M.. Appellee admits that he knew of the rules, but claims that he left his room when he did because he was taken sick with cramps. Under the circumstances, we do not think that appellee can be said to have wilfully violated the rule in question. If the rule can be construed to mean that if a miner, under any circumstances, left before the hour fixed, he did so at his peril, it was manifestly unreasonable. Aside from this, Section 28 (d) of the statute referred to, in effect, provides that a miner must be given an opportunity to leave the mine whenever he is prevented from further work.

Appellant further contends that appellee could have seen the light on the approaching car when it was at least 300 feet away, and that within that distance he passed at least two places where he might have taken refuge, within twenty-five feet of the place of accident; that he heard the car and the whistling of the driver when at such place; that he paid no attention thereto but continued on, and that such conduct constituted a lack of ordinary care.

There were but two witnesses to the accident—the plaintiff and the driver of the car. Appellee testified that he had passed the second or south latches, and had proceeded along the single track from fifty to eighty feet when he heard the rattling of a car some thirty or forty feet away; that he went a couple of steps ahead and ran to the closest place on the embankment, and climbed upon it; that the embankment crumbled and he fell in front of the horse and was dragged along and injured. He denied seeing any lights or hearing any noise other than the rattling

of the car.  The driver testified that he saw appellee's light coming for some distance; that he signaled with his lamp and whistled; that appellee paid no attention and did not try to get out of the way until the horse ran into him, when he jumped to one side, and fell back upon the trace chain which ran from the horse to the car, thereby frightening the horse and causing him to run away and the car to drag appellee some fifteen feet or more.

Whether appellee was in the exercise of ordinary care was a question of fact for the jury, who were the judges of the credibility of the witnesses and the weight to be given to their testimony.  The jury evidently believed appellee and disbelieved the driver.  In such case we think they were warranted in finding that appellee was in the exercise of ordinary care.  We find nothing in the record to justify the contention that appellee was guilty of a want of due care because he left, as alleged, a place of safety and ran into a place of danger.  Where one, without his own fault, is, through the negligence of another, put in such apparent danger as to cause him terror, loss of self-possession and bewilderment, and as a natural consequence thereof, he, in attempting to escape, puts himself in a more dangerous position, he is not, as a matter of law, chargeable with contributory negligence that will prevent him from recovering damages for the injury.  The obligation resting upon him to exercise due care for his own safety, does not require him to act with the same deliberation and foresight which might be required of him under ordinary circumstances.  C. & A. R. R. Co. v. Courson, 198 Ill. 102.

As we have said, the question of due care on the part of appellee was one of fact to be determined by the jury, upon a consideration of all the surrounding facts and circumstances disclosed by the evidence.  Aside from its duty to comply with the statute, it was the common law duty of appellant to use reasonable care to provide a reasonably safe place for appellee to work.  The witness Robinson testified that there was no place of safety along the entry between the first and second latches, except the embank-

ment; that the fire clay had been loose and crumbly for fifteen months prior to the accident; that he told the mine manager and superintendent about the condition of the entry several times, and that the superintendent told him to clean it up, about a year before the accident, but that nothing was done except to clean the track.

The negligence charged in the second and third counts of the declaration, it will be seen, is substantially the same in both, being a violation of the statutory requirements as to maintaining places of refuge. The second count, however, fails to aver a wilful violation of the statute. Notwithstanding such omission—and we think correctly—the trial court treated the count as statutory and instructed the jury that to recover thereunder the plaintiff must prove a wilful violation of the statute.

The evidence tends to prove that appellant failed to exercise reasonable care to provide a reasonably safe place for appellee to work; that the condition of the entry was dangerous; that appellant was aware thereof, and that it failed to put the entry in reasonably safe condition; and we are unable to say that the jury was not warranted in so finding. We are, therefore, of opinion that there is sufficient evidence in the record to justify the verdict under either count of the declaration.

Counsel for appellant contend that while places of refuge were not provided, nor rooms cut at twenty-yard intervals, as required by the statute, nevertheless the absence thereof was not the proximate cause of the accident; that appellee left a place of refuge after hearing the approaching car, and was injured before he had proceeded a distance of twenty yards therefrom. The evidence as to these facts is conflicting, and we cannot say that the jury was not justified in finding that if the statute had been complied with, appellee would have been able to have avoided injury. What was the proximate cause of the injury was also a question for the jury.

Appellant complains of the refusal of its first instruction, which told the jury, in substance, that if the mine exam-

iner made an examination of the place where the accident occurred on the morning of the day of the accident, and found the place in safe condition, and that no notice was conveyed to said examiner or appellant of any dangerous condition at the place of the accident, then they must find that there was a compliance on the part of appellant with the statute, and that there was no wilful violation thereof.

The instruction was properly refused, for the reason that it was not based upon the evidence. The record fails to show that the mine examiner found the entry in safe condition. In fact, in his testimony he states that he found the entry in question in "fair condition" only; that he made a report on the morning of the day of the accident, on a piece of paper, which he gave to the mine manager. When asked if the report was placed upon the mine book, or if he knew it was there, he replied, "I was satisfied." When asked if he had any positive recollection about it, he replied, "I told you I sign up the book. I usually signed or anybody else signed." It is obvious that while the entry may have been in "fair" condition, it does not follow that its condition was "safe," within the meaning of the statute.

Appellant complains that the court refused to instruct the jury to state in their verdict on which count or counts they should find the defendant guilty. It insists that such refusal was prejudicial error; that it is not certain whether the jury found the defendant guilty on a common law count or a statutory one. We know of no rule of law or practice under or by which a jury can be required in their general verdict to specify under what count or counts of the declaration the same is returned. The statute has provided a method whereby parties may be informed as to the findings of the jury upon ultimate facts. Appellants might, by asking the submission of special interrogatories to the jury, have obtained the information desired. Having failed to do so it cannot now complain. There was no error in refusing the instruction in question.

We do not think the fact that plaintiff's instructions failed to refer to each count of the declaration specifically,

could have confused or misled the jury to the prejudice of appellant. Appellant's given instructions stated in detail the elements necessary to be proved to sustain each of the different counts of the declaration. The instructions given in behalf of both parties, when read together, are consistent, and fully, fairly and accurately present the law as applicable to the case.

It is not claimed that the damages awarded are excessive. There being no error in the record the judgment will be affirmed.

*Affirmed.*